UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALVIN S. BROWN,

                            Plaintiff,

         - against -

WEB.COM GROUP, INC.,

                    Defendant.

**<u>OPINION AND ORDER</u>**

14 Civ. 440 (ER)

---

<u>Ramos, D.J.:</u>

       Alvin S. Brown ("Plaintiff"), proceeding *pro se*, brings suit against Web.com Group, Inc. ("Defendant") for injuries stemming from Defendant's deletion of a website owned by Plaintiff and all of the site's content.  Defendant, a Delaware Corporation headquartered in Jacksonville, Florida, provides domain name registration, website hosting, and internet marketing services.[1] Plaintiff is a New York resident who contracted with Defendant and Defendant's predecessors in interest to host several websites related to his business as a tax expert and attorney.  Plaintiff alleges that in the aftermath of a billing dispute, Defendant, without notifying Plaintiff, irrevocably deleted one of those websites and its data, causing significant financial harm. Defendant now moves to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, arguing that this Court lacks personal jurisdiction over Defendant and is the improper venue in light of a valid and binding forum selection clause.  For

---

[1] In the complaint, Plaintiff mentions two defendants, "Web.com" and "David L. Brown, Chairman," Compl. ¶ I.B, but none of Plaintiff's submissions contain a single allegation pertaining to the latter, and he is not listed in the caption.  To the extent that Plaintiff intended to bring suit against David Brown, the analysis herein is unchanged.

the reasons discussed below, the motion to dismiss for lack of personal jurisdiction is DENIED. However, the motion to dismiss for improper venue is GRANTED.

## I. Background

As 12(b)(2) and 12(b)(3) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.,* No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n. 1 (S.D.N.Y. Feb. 5, 1992); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  The following facts, drawn from the complaint and parties' submissions regarding Defendant's motion to dismiss, are construed in the light most favorable to the Plaintiff.  *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)).

### A.  The Conflict

On June 30, 1998, Plaintiff registered with Network Solutions, a domain name registration service, to host the website www.irs-offer-incompromise.com ("OIC website").  Pl.'s Opp'n Ex. E.[2]  Network Solutions was later acquired by Defendant, which also owned Interland, Inc. ("Interland"), another website hosting service, and Defendant transferred "hosting" of the

---

[2] The parties provide conflicting accounts of Defendant's business structure, the relationship between Defendant and its predecessors in interest, and the history of Plaintiff's relationship with these companies.  The Court finds these facts irrelevant for the purposes of the current analysis and recites them only as necessary to address the parties' arguments, which appear to rely on them a great deal.  With regard to the origins of the parties' relationship, Defendant asserts the following:  Plaintiff first registered for web hosting services in 2003 through Interland, Inc. Def.'s Mem. 1.  In 2005, Interland acquired two other companies and changed its name to Web.com, Inc. *Id.*  In 2008, Web.com, Inc. was acquired by Website Pros, Inc., which changed its name to Web.com Group, Inc. *Id.*

OIC website from Network Solutions to Interland.  *Id.* at 1.[3]  In addition to the OIC website,

Plaintiff owned several other websites, including www.irstaxattorney.com, for which he retained

Defendant's internet marketing services.  Compl. ¶ III.C.  The conflict at hand arose in

approximately November 2013, when Plaintiff contested a charge for those services, which,

allegedly, Defendant never actually performed.  *Id.*  Defendant refused to refund Plaintiff, who

therefore directed his credit card company to "charge back" a portion of the fees to his

account.  *Id.*

In or around November 2013, Defendant ceased hosting the OIC website and, without

notice to Plaintiff, irretrievably deleted the "valuable and proprietary data" stored on the site.  *Id.*

Plaintiff found out about the deletion when he contacted Defendant on December 31, 2013 to

offer payment for approximately $88 of hosting fees in arrears.  *Id.*  At that time, Defendant's

employees explained that the site and data had been deleted and could not be restored.  *Id.*

When active, the website helped generate referrals responsible for much of Plaintiff's

income as a tax expert specializing in "offers in compromise," Compl. ¶ V, a process of settling

tax debt with the Internal Revenue Service (IRS) for less than the full amount owed.  *See* IRS,

"Offer in Compromise," http://www.irs.gov/Individuals/Offer-in-Compromise-1 (last visited

Oct. 14, 2014).  As a result of the OIC website's age, it received favorable placement in search

engine inquiries about offers in compromise.  Compl. ¶ V.  Consequently, Defendant's deletion

of the website and data has caused the loss of "most of Plaintiff's gross income."  *Id.*

**B.  The Relevant Forum Selection Clause**

Several years before this dispute, in 2011, Defendant implemented an updated Master

Service Agreement ("Service Agreement") including the forum selection clause that Defendant

---

[3] Plaintiff writes, "It is unclear how but the hosting of [the website] was transferred from Network Solutions to Interland."  Pl.'s Opp'n 1.

claims applies to this action.  Shutterly Decl. ¶ 9h.[4]  Paragraph 16 of the Service Agreement,

titled "Governing Law and Venue," declared in relevant part:  "Customer agrees that any judicial

proceeding relating to or arising out of this Agreement or the Services shall be instituted only in

a federal or state court of competent jurisdiction in Duval County in the State of Florida."

Shutterly Decl. Ex. A.[5]  Defendant informed its customers of the new Service Agreement by

posting a large banner message, linked to the Agreement, at the top of its login page for existing

customers.  *Id.* ¶ 9(i).  The banner message stated that, in order for customers to access their

accounts, they would first have to review and approve Defendant's new Terms of Service.  *Id.*

Indeed, customers could not access their accounts until they had done so.  *Id.*  Plaintiff (or his

representative or agent)[6] reviewed and accepted the terms of the Service Agreement on May 8,

2011.  *Id.* ¶¶ 9(j)-(k).  Subsequent emails from Defendant to Plaintiff included links and

references to Defendant's "Terms & Conditions."  *Id.* Ex. F.

---

[4] The parties disagree about certain facts that bear on whether Plaintiff's dealings with Defendant and its predecessors in interest were subject to a forum selection clause before 2011.  Defendant's papers demonstrate that Plaintiff's 2003 contract with Interland limited venue in any action to a state or federal court in Fulton County, Georgia, Shutterly Decl. Ex. D, and that Plaintiff's contract with Network Solutions restricted venue in any action to a state or federal court in Fairfax County, Virginia.  Second Shutterly Decl. Ex. B.  Plaintiff contests the validity of these contracts.  Ultimately, these earlier venue agreements are inessential to Defendant's 12(b)(3) motion.  Neither party contests the existence of a contract between Plaintiff and Defendant at the time of the OIC website's deletion in 2013.  That contract is governed by the 2011 forum selection clause discussed above.

[5] Defendant's submissions reference an exhibit that purportedly "include[s] the language" of the forum selection clause contained in the 2011 Master Service Agreement.  *See* Shutterly Decl. ¶¶ 9(h)-(j); Def.'s Mem. 1, 6, 8-9.  However, this exhibit appears to capture a previous version of Defendant's Master Service Agreement, as it indicates that it was last updated on December 15, 2010.  *Id.* Ex. A.

[6] Defendant provides an exhibit suggesting that an individual named "Sayam Khan" reviewed and accepted the 2003 Interland contract.  Shutterly Decl. Ex. C.  Plaintiff states that Khan is a "professional internet expert."  Pl.'s Opp'n 2.  Defendant provides a separate exhibit indicating that accounts now registered to Plaintiff were originally registered under the name "Sayam Khan," but that on May 24, 2005, a customer logged onto Plaintiff's account and changed the name associated with his websites to "Alvin Brown."  Second Shutterly Decl. Ex. C.  Plaintiff argues that if Khan approved a venue agreement, he lacked authority to do so.  Pl.'s Opp'n 10.  Yet neither party offers evidence to suggest that Khan or anyone besides Plaintiff was responsible for reviewing the 2011 contract.

### C.  Defendant's New York Contacts

Defendant is incorporated under the laws of Delaware and headquartered in Jacksonville, Florida.  *Id.* ¶ 2.  It has no offices, real property, bank accounts, or assets in the State of New York, and it is not authorized by the New York Department of State to conduct business here. *Id.* ¶¶ 2-3.   By means of its own website, www.web.com, Defendant offers website hosting, internet marketing, and related services to customers throughout the United States and beyond. *Id.* ¶¶ 5-6; Pl.'s Opp'n 3.  Defendant provides these services solely "via the internet, without entering the State of New York," Shutterly Decl. ¶ 5, and maintains no in-state servers.  Second Shutterly Decl. ¶ 3.

Yet Defendant is not devoid of contacts with the State.  In Plaintiff's words, Defendant "has extensive business relationships with businesses and residents of New York" and "raises a great deal of its gross revenue from New York customers," including Plaintiff.  Pl.'s Opp'n 6. New Yorkers constitute 6.24% of Defendant's global customers and 7.5% of its domestic customers.  Shutterly Decl. ¶ 5.  Defendant frequently contacts these customers via email to promote its services.  Pl.'s Opp'n Ex. F.  Defendant employs five people in the State, four of whom telecommute from private residences.[7]  Shutterly Decl. ¶ 4.  Finally, Defendant's principals regularly attend and present at conferences in New York.  Pl.'s Opp'n 6, Ex. B.

---

[7] On July 30, 2010, Defendant acquired a subsidiary, Register.com, Inc. ("Register.com"), which at that time had a 50-employee New York office.  Shutterly Decl. ¶ 4.  Defendant subsequently closed Register.com's New York office and let its employees choose between transferring to Defendant's Florida headquarters and terminating their employment.  *Id.*  It made exceptions for four employees who declined to relocate but possessed "valuable legacy knowledge" and were therefore allowed to work "remotely from their private homes." *Id.*  Yet as of April 19, 2014, Defendant's web page listed a New York address and phone number for Register.com.  Pl.'s Opp'n Ex. A.  On March 1, 2014, Defendant acquired another subsidiary, Snapnames.com, Inc., which had a single employee in Monroe, New York, who Defendant has not yet asked to relocate.  Shutterly Decl. ¶ 4.

### D.  Procedural History

Plaintiff commenced this action on January 15, 2014.  Compl.  In the Complaint, Plaintiff does not identify specific causes of action, stating only that Defendant, "with malice or gross negligence, deleted the valuable content" of Plaintiff's website, Compl. ¶ III.A, and that this deletion was "willful and malicious."  *Id.* ¶ V.  Plaintiff's submissions in response to the instant motion, however, allege negligence, conversion, tortious interference with contract, and breach of contract.  *See* Pl.'s Opp'n 4 (declaring that Defendant breached a duty of care owed to Plaintiff, and that damages or injury resulted from that breach); *id.* (referring to an "intentional tort," the "willful act" of Defendant's deletion of the website and its data, which caused "serious financial damage to Plaintiff"); Pl.'s Sur-Reply 2 (describing Defendant's actions as "conversion"); *id.* at 3 (alluding to "tortious interference with contract"); *id.* ("Damages are being sought for this breach of contract . . . .").[8]  Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).  On April 15, 2014, Defendant filed a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).  Doc. 8.

## II. Standard of Review

"The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction."  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co.*, 417 F.3d at 355).  "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."  *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y.

---

[8] Defendant argues that "the only plausible cause of action in this case is for breach of contract" and that "both parties have proceeded . . . as if this were a contract case."  Def.'s Reply 3.

2009)).  To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction or venue.  *Gulf Ins. Co.*, 417 F.3d at 355; *CutCo Indus. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986).[9]  The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor.  *Casville*, 2013 WL 3465816, at *3 (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).

## III. Discussion

### A. Personal Jurisdiction

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  This determination involves a two-step analysis.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a).  If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

---

[9] This is the standard where the Court addresses jurisdiction or venue on pleadings and affidavits.  At an evidentiary hearing or trial, "the plaintiff must demonstrate [venue or jurisdiction] by a preponderance of the evidence."  *Gulf Ins. Co.*, 417 F.3d at 355 (citing *CutCo Indus.*, 806 F.2d at 364-65).

### 1. General Jurisdiction

A foreign corporation's susceptibility to general jurisdiction turns on whether its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). A defendant who "engage[s] in occasional or casual business in New York" or "mere[ly] solicit[s] . . . New York customers" does not meet this standard. *Bossey ex rel. Bossey v. Camelback Ski Corp.*, 21 Misc. 3d 116(A), No. 36142-07, 2008 N.Y. Slip Op. 52080(U), at *3 (N.Y. Sup. Ct. 2008). Rather, § 301 applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34, 563 N.Y.S.2d 739, 741, 565 N.E.2d 488, 490 (N.Y. 1990) (citing *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (N.Y. 1917)).

The classic, but not exclusive, bases of general jurisdiction are a corporation's place of incorporation and principal place of business. *Daimler*, 134 S. Ct. at 760. Additional indicia of a corporation's presence in the forum include whether it has employees, agents, offices, bank accounts, or property within the state; whether it is authorized to do business there; the volume of business it conducts with state residents; whether it has a phone listing in the state; whether it does public relations work there; and whether it pays state income or property taxes. *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003); *Bossey*, 2008 N.Y. Slip Op. 52080(U), at *3. Courts may also assert jurisdiction pursuant to § 301 using the "solicitation plus" doctrine, which confers jurisdiction over "entities that 'regularly solicit[] business [in New York] and engage . . . in some additional commercial activity within the state.'" *Schultz v. Ocean Classroom Found., Inc.*, No. 01 Civ. 7487 (DAB), 2004 WL 488322, at

*4 (S.D.N.Y. Mar. 15, 2004) (quoting *Thomas Publishing Co.*, 237 F.Supp.2d 489, 491 (S.D.N.Y. 2002)).

Defendant is not "essentially at home" in New York.  It is neither incorporated nor headquartered here.  Shutterly Decl. ¶ 2.  It has no offices, property, bank accounts, or assets in New York and is not authorized to conduct business here.  *Id.* ¶¶ 2-3.  Defendant's sole ties to New York, based on the parties' submissions, are in-state customers, emails directed at those customers, attendance at local presentations and conferences, and five in-state employees, four of whom telecommute.  *Id.* ¶¶ 2-5; Pl.'s Opp'n 6; *Id.* Ex.s B, F.

It is significant that 7.5% of Defendant's domestic customers reside in New York, but these customers seek and obtain services solely via the internet, Shutterly Decl. ¶ 5, and web-based sales and solicitations—while often sufficient to confer specific jurisdiction—usually are not satisfactory grounds for general jurisdiction.  *See Allojet PLC v. Vantgage Assocs.*, No. 04 Civ. 05223 (SAS), 2005 WL 612848, at *5 (S.D.N.Y. Mar. 15, 2005) (citing *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 408 (S.D.N.Y. 2002)).  Only in rare cases have courts asserted general jurisdiction under a "solicitation plus" theory based on a foreign corporation's internet contacts with the forum.  *See id.*, at *6 n. 85 (collecting cases).

"On the facts of this case, the Court would be hesitant to conclude that C.P.L.R. § 301 is satisfied . . . [and] declines to do so."  *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 571 (S.D.N.Y. 2000).  Subjecting Defendant to general jurisdiction, allowing courts in New York to settle "causes of action arising from dealings entirely distinct from" Defendant's in-state activities, *Daimler*, 134 S. Ct. at 754, would likely "contravene the purposefully narrow reach and long-standing stringent application of C.P.L.R. § 301."  *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 Civ. 6893 (MBM), 2006 WL 1147963, at *4 (S.D.N.Y. May 1, 2006)

9

(finding no general jurisdiction over an online retailer that allowed "anyone with an Internet connection" to view its website and purchase products online); *see also Hennigan v. Taser Intern, Inc.*, No. 00 Civ. 2981 (MBM), 2001 WL 185122, at *2 (S.D.N.Y. Feb. 26, 2001) (finding no general jurisdiction where 3-5% of a corporation's nationwide sales took place in New York); *C.E. Jamieson & Co. v. Willow Labs, Inc.*, 585 F. Supp. 1410, 1411 (S.D.N.Y. 1984) (deeming insufficient for jurisdiction under § 301 that a defendant made 5% of its gross sales in New York, employed a New York customs agent, and had a New York bank account).

## 2. Long-arm Jurisdiction

Thus, Defendant may be subject to personal jurisdiction only pursuant to the New York long-arm statute.  Under C.P.L.R. § 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent:  (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . ;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney).  Sections 302(a)(2) and (a)(4) do not apply because there is no viable allegation of a tortious act committed in New York, and Defendant does not own, use, or possess real property here.[10]  Jurisdiction may be appropriate under § 302(a)(3) but, as

---

[10] Plaintiff argues that § 302(a)(2) confers jurisdiction because "[t]he multitudes of misconduct complaints filed by customers or former customers against Defendant suggest many more tortious acts against other New York residents."  Pl.'s Opp'n 6-7.  Yet Plaintiff offers no proof of torts against other New Yorkers, and, if proof existed, it would have no bearing on specific jurisdiction for Plaintiff's suit.  Plaintiff also argues that § 302(a)(4) confers

discussed below, the Court has inadequate information to make a conclusive determination.

However, jurisdiction may be properly asserted pursuant to C.P.L.R. § 302(a)(1).

### i.      § 302(a)(3)

Because Plaintiff alleges causes of action for negligence, conversion, and tortious

interference with contract, § 302(a)(3) would appear to confer personal jurisdiction over

Defendant.  Section 302(a)(3) applies to non-domiciliary defendants who "commit[] . . . tortious

act[s] without the state causing injury to person or property within the state."  N.Y. C.P.L.R.

§ 302(a)(3).  Pursuant to § 302(a)(3), courts apply a "situs-of-injury test, which asks them to

locate the 'original event which caused the injury.'"  *Bank Brussels Lambert v. Fiddler Gonzalez

& Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (citing *Hermann v. Sharon Hosp., Inc.*, 135

A.D.2d 682, 683, 522 N.Y.S.2d 581 (N.Y. App. Div. 1987)).  "[T]he situs of the injury is the

location of the original event which caused the injury, not the location where the resultant

damages are felt by the plaintiff."  *Whitaker*, 261 F.3d at 209 (quoting *Mareno v. Rowe*, 910 F.2d

1043, 1046 (2d Cir. 1990)).

An injured party's domicile or residence in New York cannot, alone, establish

jurisdiction.  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y.

2008).  Nor can "[t]he occurrence of financial consequences in New York due to the fortuitous

location of plaintiffs in New York . . . where the underlying events took place outside New

York."  *United Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y.

---

jurisdiction because Defendant "uses New York real estate" and "represents that it has a physical presence in New York."  *Id.* at 7.  However, Defendant supports its assertion that it no longer owns, rents, or uses New York property with a copy of a Lease Termination for Register.com's New York office.  Second Shutterly Decl. ¶¶ 2-4, Ex. A. Additionally, "the listing of a New York address on defendant's website [would] not establish that [it] actually ha[s] an office in New York . . . ." *Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 417 (E.D.N.Y. 2011). Neither party has alleged or provided evidence of a New York office for Snapnames.com, but even if Defendant owned or rented a physical office in Monroe, Plaintiff's claim would be totally unrelated to that property, rendering it irrelevant for the purpose of specific jurisdiction.  Def.'s Reply 5.  Accordingly, jurisdiction cannot be established pursuant to C.P.L.R. §§ 302(a)(2) and (a)(4).

1991).  Conversely, "harm to a business in the New York market through lost sales or lost customers" may meet the requirement of injury in the forum state, *Energy Brands*, 571 F. Supp. 2d at 467 (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997)), but "those lost sales must be in the New York market, and those lost customers must be New York customers."  *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008).

Plaintiff alleges that the OIC website's destruction caused the loss of vital "web page referrals"—presumably customers who sought his services after visiting the website—and "most of his gross income."  Compl. ¶ V.  If the Court could infer New York losses from Plaintiff's allegations, the "situs-of-injury" test would be satisfied.  However, Plaintiff offers no specific facts or assertions from which the Court can make such an inference.  Fortunately for Plaintiff, it need not do so:  Personal jurisdiction may be established under § 302(a)(1).

### ii.   § 302(a)(1)

Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (N.Y. 2006)).  A defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws."  *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 283 N.Y.S.2d 34 (N.Y. 1967))  Section 302(a)(1) is a "single act" statute: "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the

defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40, 43 (N.Y. 1988) (citations omitted).

A defendant's internet contacts may establish jurisdiction under § 302(a)(1), *Knight McConnell v. Cummins*, No. 03 Civ. 5035 (NRB), 2005 WL 1398590, at *2 (S.D.N.Y. June 13, 2005), depending on the "nature and quality" of commercial activity that a defendant conducts. *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586 (SAS), 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003); *see also Best Van Lines*, 490 F.3d at 251.  It is still true that "courts . . . struggl[e] to resolve on a case-by-case basis" the question of whether internet communication and conduct will "make [someone] subject to the jurisdiction of a distant court."  *Nat'l Football League v. Miller*, No. 99 Civ. 11846 (JSM), 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000). However, courts in the Southern District "have identified a spectrum of potential website contacts with a forum state, ranging from 'passive' websites, which merely display information and therefore are unlikely to support jurisdiction, to websites which clearly allow defendant to transact business in the forum state over the internet, and thus sustain jurisdiction."  *Knight McConnell*, 2005 WL 1398590, at *2 (internal citations omitted).  In the middle are cases addressing websites that are "interactive insofar as [they] permit[] the exchange of information" and may subject a defendant to personal jurisdiction, depending on "the level and nature of the exchange."  *Mattel, Inc. v. Adventure Apparel*, No. 00 Civ. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001).

By the same token, the New York Court of Appeals has upheld long-arm jurisdiction where "commercial actors and investors us[e] electronic and telephonic means to project

themselves into New York to conduct business transactions." *Deutsche Bank Sec*, 7 N.Y.3d at

71, 850 N.E.2d at 1142-43, 818 N.Y.S.2d at 167.  This is necessitated by "the growth of national

markets for commercial trade," and technological advances that "enable a party to transact

enormous volumes of business within a state without physically entering it." *Id; see also Zippo*

*Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997) ("[A]s technological

progress has increased the flow of commerce between States, the need for jurisdiction has

undergone a similar increase.") (internal citation omitted).

The instant case concerns a website, www.web.com, which does more than passively

communicate or facilitate exchanges of information. *See Citigroup*, 97 F. Supp. 2d at 565-66

(finding that a website permitting New Yorkers to apply for loans and communicate with

defendant's employees was "unqualifiedly commercial in nature," rising to the level of

transacting business required by 302(a)(1)).  It is a vehicle for business deals—namely, the sale

and delivery of website hosting and marketing services—between Defendant and its customers,

wherever they may be.  Shutterly Decl. ¶¶ 5-6.  A significant number are in New York.  *Id.*; *see*

*also Del Ponte v. Universal City Dev. Partners, Ltd.*, No. 07 Civ. 2360 (KMK) (LMS), 2008 WL

169358, at *4 (S.D.N.Y. Jan. 16, 2008) (explaining that the "regularly does or solicits business"

standard of 302(a)(3)(i) requires more than the "one shot" business transaction required by

302(a)(1), and collecting cases where 302(a)(3)(i) jurisdiction was upheld based on as little as

1% of a company's business and sales conducted in New York); *Stursberg & Veith v. Eckler*

*Indus., Inc.*, No. 95 Civ. 5147 (AGS), 1995 WL 728480, at *2 (S.D.N.Y. Dec. 8, 1995) (finding

302(a)(1) jurisdiction where less than 5% of a company's revenue was derived from New York

sales).

As described by Plaintiff, Defendant is one of the largest internet companies in the United States for web pages and web page services and raises a great deal of its gross revenue from New York customers.  Pl.'s Opp'n 6.  Defendant avails itself of the benefits of transacting business in the State by marketing services to and entering transactions with New York-based customers via www.web.com.  The instant dispute stems from those activities.   Therefore, personal jurisdiction is appropriate under New York law.

### 3.  Due Process

Having found that § 302(a)(1) confers jurisdiction over Defendant, the Court must examine whether its assertion of personal jurisdiction comports with due process.  *Best Van Lines*, 490 F.3d at 242.  Due process demands that defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal citations omitted).  The due process inquiry has two parts:  (1) "the court must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and (2) "the court must determine whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case."  *Schottenstein v. Schottenstein*, No. 04 Civ. 5851 (SAS), 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Metro. Life*, 84 F.3d at 567).  Where a non-domiciliary "avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there," the Court's exercise of personal jurisdiction will not offend due process.  *Kreutter,* 71 N.Y.2d at 466, 527 N.Y.S.2d 195, 522 N.E.2d 40.

Part one, the "minimum contacts" evaluation, "overlaps significantly" with New York's § 302(a)(1) inquiry into whether a defendant has transacted business in the State, *Best Van Lines*,

490 F.3d at 247, and the same facts supporting jurisdiction under § 302(a)(1) support the minimum contacts requirement of due process.  Defendant solicits business from New York customers via directed emails and its website, Pl.'s Opp'n Ex. F, markets its services to New Yorkers at in-state presentations and conferences, *Id.* Ex. B, conducts web transactions with customers residing in New York, Shutterly Decl. ¶ 5, and has five in-State employees.  *Id.* ¶ 4; *see, e.g.*, *Alpha Int'l*, 2003 WL 21511957, at *5 (holding that a business had "purposefully availed [itself] of the privilege of conducting business in New York" by sending direct mail and selling items to New York residents via an interactive web site); *Mattel*, 2001 WL 286728, at *4 (finding a single internet sale to a forum state resident satisfactory for due process); *Fischbarg*, 9 N.Y.3d 375, 384-85, 880 N.E.2d 22, 30 (2007) (upholding personal jurisdiction over a defendant that solicited a plaintiff's business in New York and frequently communicated with him by telephone, facsimile, and email).

Part two of the due process inquiry—the reasonableness of a Court's assertion of personal jurisdiction—depends on a consideration of "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state in furthering substantive social policies." *Schottenstein,* 2004 WL 2534155, at *8 (citing *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.,* 480 U.S. 102, 112 (1987), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)).  "Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Bank Brussels Lambert,* 305 F.3d at 129 (quoting *Metro. Life,* 84 F.3d at 568).  Here, Defendant offers

no such presentation, and the Court finds that due process is not offended by the Court's exercise of personal jurisdiction.

### B. Venue[11]

Forum selection clauses are "prima facie valid" and should be enforced unless demonstrated to be "unreasonable" under the circumstances. *M/S Bremen et al. v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Determination of whether to dismiss a claim under Rule 12(b)(3) based on a forum selection clause entails a four-part analysis. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). First, the party seeking enforcement of the forum selection clause must demonstrate that: (1) the clause was "reasonably communicated to the party resisting enforcement;" (2) the clause was "mandatory and not merely permissive;" and (3) the claims and parties involved in the suit are subject to the clause. *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 376 (S.D.N.Y. 2010) (citing *Phillips*, 494 F.3d at 383-84). If these conditions are established, at the fourth step, it is the opposing party's burden to rebut the presumption of enforceability by "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383-84 (citing *Bremen*, 407 U.S. at 15).

---

[11] It is "well-established" in this Circuit that a forum selection clause may be enforced through a Rule 12(b) motion to dismiss. *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011). However, neither the Supreme Court nor the Second Circuit has designated a single subsection of Rule 12(b) as the proper procedural device to seek dismissal of a suit based on the validity and applicability of a forum selection clause. *Id.* (citing *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006)). The consensus is that "[t]he proper vehicle is a motion to dismiss the complaint for either (1) lack of subject matter jurisdiction pursuant to [Rule] 12(b)(1); (2) improper venue pursuant to Rule 12(b)(3); or (3) failure to state a claim pursuant to Rule 12(b)(6)." *Production Resource Group, L.L.C. v. Martin Professional, A/S*, 907 F. Supp. 2d 401, 407 (S.D.N.Y. 2012) (quoting *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010)).

**a. The Forum Selection Clause Was Reasonably Communicated To Plaintiff**

It is the burden of a party seeking enforcement of a forum selection clause to demonstrate that it was reasonably communicated to a party resisting enforcement, and the Court considers all facts in the light most favorable to the resisting party. *TradeComet.com*, 693 F. Supp. 2d at 377.

Defendant's 2011 Service Agreement, which included the relevant forum selection clause, was a "clickwrap agreement," a type of contract that requires users to accept its terms before accessing a program or obtaining services. *Id.*; *see also* Def.'s Mem. 7; Shutterly Decl. ¶¶ 9(h)-(i). District Courts in this Circuit have found that clickwrap agreements reasonably communicate the presence and content of forum selection clauses for the purpose of the *Phillips* analysis. *See TradeComet.com*, 693 F. Supp. 2d at 377; *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006) (reasoning that individuals' "very existence" as customers may be evidence that they agreed to the terms and conditions of a clickwrap agreement).

Plaintiff does not affirmatively deny that he or a representative approved the 2011 Service Agreement, arguing only that Defendant inadequately establishes whether Plaintiff or his employee saw a venue agreement, if any existed. *See* Pl.'s Opp'n 10. Defendant, meanwhile, offers evidence that Plaintiff or someone with access to his account reviewed and accepted the Service Agreement on May 8, 2011. Shutterly Decl. ¶ 9(j), Ex. B; Def.'s Mem. 6-7. Defendant also declares that continued use of its services and website after 2011 required customers to review and accept the Agreement. Shutterly Decl. ¶¶ 9(i)-(k). The events at issue took place in November and December of 2013. Compl. ¶¶ III.B-C. Because Plaintiff "neither denies that [he or a representative] agreed to the user agreement that contained the forum selection clause nor offers any evidence to the contrary," he has not overcome Defendant's prima facie showing that Plaintiff in fact accepted the relevant clause. *TradeComet.com*, 693 F. Supp. 2d at 378.

18

### b.  The Clause Was Mandatory and Not Merely Permissive

Forum selection clauses may be "permissive," conferring jurisdiction in a designated forum without denying the plaintiff his choice of another appropriate forum, or mandatory, determining in advance the forum(s) where any and all disputes must be brought.  *Phillips*, 494 F.3d at 386.  The determination of whether a forum selection clause is mandatory or permissive is an issue of contract interpretation.  *Id.*  A clause is deemed mandatory when it "confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."  *Id.*

The forum selection clause in Defendant's 2011 Service Agreement declares that "any judicial proceeding relating to or arising out of [the] Agreement or the Services *shall* be instituted *only* in a federal or state court of competent jurisdiction in Duval County in the State of Florida." Shutterly Decl. Ex. A, at ¶ 16 (emphasis added).  This language unambiguously designates a single forum as the sole appropriate venue for a suit related to the parties' dealings.  *See Phillips*, 494 F.3d at 386 (finding that the directive, "*any* legal proceedings that may arise out of [the agreement] *are to be brought* in England," constituted a mandatory forum selection clause) (emphasis added); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d at 378 (concluding that the phrase "*shall* be litigated *exclusively* in the federal or state courts of Santa Clara County, California" was compulsory language rendering a forum selection clause mandatory) (emphasis added).

The 2011 Service Agreement further stated, "Customer . . . waives the right to challenge the jurisdiction of [a state or federal court in Duval County, Florida] on grounds of lack of personal jurisdiction or forum non conveniens or to otherwise seek a change of venue." Shutterly Decl. Ex. A, at ¶ 16.  The clause does not only permit jurisdiction in the designated

forum; it also forbids customers from seeking to transfer any matter from the designated forum to another venue.  The forum selection clause is unequivocally mandatory.[12]

### c. The Claims and Parties Involved in the Suit are Subject to the Clause

The forum selection clause covers "any judicial proceeding relating to or arising out of this Agreement or the Services."  *Id*.  It indisputably applies to the claims and parties involved in this suit.

"[F]orum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses."  *TradeComet.com*, 693 F. Supp. 2d at 378 (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)).  In *Phillips*, the Second Circuit distinguished forum selection clauses that govern claims that "arise out of" an agreement from claims that "have some possible relationship with the contract," including claims that "relate to," are "associated with," or "arise in connection with" the contract.  494 F.3d at 382, 389.  The clause at issue covers claims that "arise out of" and "relate to" the Agreement, capturing a wide array of actions.

Plaintiff alleges that Defendant improperly deleted a website that Plaintiff registered with Defendant.  Pl.'s Opp'n 4.  Defendant explains that by engaging Defendant to host his website, Plaintiff accepted the terms of the 2011 Service Agreement, and that his claim, involving "the management of data hosted on [his] website by [Defendant]" directly relates to and arises from the Agreement.  Def.'s Mem. 9.  Plaintiff also alleges that this deletion constituted a breach of contract.  Pl.'s Sur-Reply 2.  Plaintiff does not specify which contract was breached, but it is reasonable to infer that Plaintiff's cause of action for breach of contract pertains to the 2011

---

[12] It is worth noting that even prior to the 2011 Service Agreement, Plaintiff never had the right to file suit in this Court.  As discussed above, Plaintiff's contract with Interland had a clause limiting all actions to Fulton County, Georgia, Shutterly Decl. ¶¶ 9(c)-(d), and his contract with Network Solutions limited all actions to Fairfax County, Virginia.  Second Shutterly Decl. Ex. B.  Those clauses, too, were mandatory rather than permissive.

Service Agreement.  All of Plaintiff's allegations arise from or relate to the Service Agreement and, consequently, are subject to the forum selection clause.

### d. Enforcement Would Not be Unreasonable or Unjust, and the Clause is Not Otherwise Invalid

It is Plaintiff's burden to demonstrate that enforcement of the forum selection clause would be unreasonable or unjust, or that the clause is otherwise invalid.  *Phillips*, 494 F.3d at 383-84.  A forum clause is enforceable unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."  *Id.* at 392 (citing *Roby*, 996 F.2d at 1363).

Plaintiff's arguments in support of non-enforcement do not demonstrate either of the first two circumstances.  With regard to the third, Plaintiff argues that New York has a "strong public policy" interest, because Defendant "may have committed a 'second degree class D felony' under the New York State Penal Code, as well as 'conversion.'"  Pl.'s Sur-Reply 4-5.  However, New York has no recognized policy interest in hearing all conversion claims brought by its residents, and Plaintiff's claims that Defendant may have committed "criminal mischief in the fourth degree" under the New York Penal Law, *Id.* at 2, are irrelevant to this case.[13]  Plaintiff also claims a "public policy to hold internet Companies, with substantial business interactions in New York, accountable for breach of contract damages in a venue that internet customers can afford to pursue their remedies in law without incurring expenses that exceed the damages incurred."  *Id.* at 5.  Plaintiff has no support for his assertion of this State policy.

---

[13] Although Plaintiff repeatedly references the New York criminal mischief statute, any allegation of criminal mischief is irrelevant to this civil action for negligence, conversion, tortious interference, and breach of contract. *See* Pl.'s Opp'n 2, 4, 9; Pl.'s Sur-Reply 2-4.

With regard to the fourth, Plaintiff asserts that it would be "gravely difficult and inconvenient for any Plaintiff" engaged in the types of "small hosting contracts" entered into by Defendant to file suit against Defendant in Florida.  Pl.'s Sur-Reply 4.  He makes no allegations that bear on why litigation in Florida would be particularly difficult for him personally.  As in *Phillips*, the "gap in [Plaintiff's] reasoning is that his averments suggest that litigation in [Florida] may be more costly or difficult, but not that it is impossible."  *Phillips*, 494 F.3d at 393. His primary argument is that "Defendant is a global publicly traded corporation with the ability to hire an international law firm," while Plaintiff's home and resources are in New York. Pl.'s Sur-Reply at 4.  His allegations do not suggest that forcing Plaintiff to litigate in Florida would deprive him of his day in court.  *See M/S Bremen*, 407 U.S. at 18 (noting that it is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court").

In fact, Plaintiff's primary argument regarding step four of the *Phillips* analysis is his strenuous contention that enforcement of the forum selection clause would be unjust in light of Defendant's deletion of a website that was the basis of the parties' contract.  *See* Pl.'s Opp'n 9. He contends that it would be "inequitable" to enforce a "possible venue agreement" that was an "integral part" of the Agreement that "Defendant caused to fail with tortious and even possible criminal conduct." *Id.*  He reasons that Defendant's "intentional deletion" of the OIC webpage and data "effected a unilateral cancellation" of the contract and "any possible venue agreement." *Id.*  Plaintiff argues, "The purpose of the contract has been 'frustrated,'" and the consideration for the contract has "failed."  Pl.'s Sur-Reply 4.  Setting aside, momentarily, the circular logic of Plaintiff's argument that the contract for which he brings a breach of contract claim has been

unilaterally cancelled and no longer exists, this argument is without merit.  Defendant's forum selection clause exists precisely to designate a venue for judicial actions related to allegations like Plaintiff's.

Accordingly, the forum selection clause in Defendant's 2011 Service Agreement is enforceable, and this Court is the improper venue for Plaintiff's suit.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED, but Defendant's motion to dismiss for improper venue is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 7, to mail a copy of this Opinion and Order to Plaintiff, and to close the case.

It is SO ORDERED.

Dated:     October 28, 2014
           New York, New York

Edgardo Ramos, U.S.D.J.